# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARO QUEZADA,<br><br>  Plaintiff,<br><br>  v.<br><br>R. FISHER, et al.,<br><br>  Defendants.<br>_____/ | CASE NO. 1:09-cv-01856-LJO-GBC (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THIS ACTION BE DISMISSED AS DUPLICATIVE OF ACTION NO: 1:08-cv-01404-FRZ<br><br>ORDER THAT PLAINTIFF'S OBJECTION SHOULD BE NO LONGER THAN FIFTEEN PAGES. |

**I.   Procedural History**

Plaintiff Alvaro Quezada ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original complaint on October 22, 2009, which is currently before the Court. Doc. 1. Upon review of the complaint, it appears to the Court that this action is proceeding on substantively identical issues to the second amended complaint that Plaintiff filed on June 1, 2009, in *Quezada v. Hedgpeth, et al.*, 1:08-cv-01404-FRZ. *Compare Quezada v. Fisher, et al.*, 1:09-cv-01856-LJO-GBC at Doc. 1-2 *with Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, 1:08-cv-01404-FRZ at Doc. 18-19.

**II.   Screening**

**A.   Screening Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"'Under § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff.'" *Hamilton v. Brown*, 630 F.3d 889. 892-93 (9th Cir. 2011) (quoting *Resnick v. Warden Hayes*, 213 F.3d 443, 447 (9th Cir.2000). "'Additionally, in general, courts must construe pro se pleadings liberally.'" *Id.* A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Synagogue v. United States*, 482 F.3d 1058, 1060 (9th Cir. 2007); *NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In determining whether to dismiss an action, the Court must accept as true the allegations of the complaint in question, and construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

**B.   Plaintiff's Complaint**

Plaintiff is incarcerated at California State Prison, Corcoran and is suing under section 1983 for events which occurred while a prisoner at Kern Valley State Prison in Delano California. Doc. 1. In his complaint, Plaintiff names the following defendants: 1) R. Fisher (Captain);  2) C. Jose (Sergeant); 3) D. I. Doria (Sergeant); 4) C. Scott (Correctional Officer); and 5) H. Ortiz (Correctional Officer). Doc. 1 at 2-4. Plaintiff seeks declaratory relief, compensatory and punitive damages. Doc. 1 at 3.

**1.   Defendant Fisher**

Plaintiff alleges that Defendant Fisher "launched [a] conspiracy to violate plaintiff's [First]

Amendment rights [because of] Plaintiff's active role as an 'Inmate Advisory Counsel Representative'" ("IAC"). Doc. 1 at 4, 26. Plaintiff alleges that he was penalized by Defendant Fisher because Plaintiff sent a complaint on August 14, 2006, to the Warden for KVSP (Mike Knowles), regarding Defendant Fisher's "willful disregard" for the IAC representatives. Doc. 1 at 4, 21-22, 26. According to Plaintiff, Defendant Fisher displayed a lack of respect to the IAC body which were attempting to implement "pro-social programs for the 'General Population through [SB-737].'" Doc. 1 at 4, 26.

On January 10, 2007, Defendant Fisher was the chairperson for Plaintiff's Unit Classification Committee ("UCC") for Plaintiff's annual review. Doc. 1 at 4, 26. Plaintiff requested that the UCC consider Plaintiff's "needs, interest, and desires" and requested that he be classified so that the Daily Movement Sheet ("DMS") would reflect Plaintiff current "Chrono" which already identified Plaintiff as an "other." Doc. 1 at 4, 26. According to Plaintiff, he introduced his informative chrono ("128-G") specifying that Plaintiff was housed with "non-affiliated others" and Plaintiff submitted a roster that confirmed Plaintiff was the officially elected IAC Representative for the "others" of the B2 housing unit. Doc. 1 at 4, 26-27. Although Plaintiff identifies himself as "of Hispanic origin," Plaintiff states that he explained to the UCC that he wished to be classified as "other," and not as Mexican for the purpose of clarification and to eliminate any erroneous association to the Hispanic prison gangs or other disruptive groups based on KVSP officials implementation of race-based lock-downs. Doc. 1 at 5, 27.

According to Plaintiff, Defendant Fisher "conspired in the meeting of the minds" with other UCC members, R. Thomas and G. Garcia and the said conspiracy was for the purpose of denying Plaintiff's request to be categorized as "other" rather than as "Mexican." Doc. 1 at 5, 27. Plaintiff alleges that in furtherance of this retaliatory conspiracy, Defendant Fisher instructed Plaintiff's "Housing Control Officer" Harrison to confine Plaintiff with the rest of the Hispanic prison gang members that were currently on lock-down and awaiting a criminal investigation. Doc. 1 at 5, 27. Additionally, Plaintiff alleges that he has a chrono signed by Defendant Fisher acknowledging that Plaintiff was neither affiliated with the "Southern Hispanic Scenario" nor any disruptive groups or gangs. Doc. 1 at 5-6, 27. According to Plaintiff, Defendant Fisher knowingly disregarded all of

1  Plaintiff's informative documents that clearly proved that Plaintiff's was not affiliated with any
2  prison gang or disruptive group.  Doc. 1 at 6, 27.
3        On January 11, 2007, Plaintiff filed another "constructive notice" to the newly appointed
4  warden, A. Hedgpeth, in which Plaintiff complained that he was being placed on lock-down, and
5  subjected to a punitive cell search that was specifically targeting the "Hispanic Disruptive groups"
6  that were under a criminal investigation.  Doc. 1 at 6, 28.  Plaintiff further expressed to Hedgpeth
7  that he was being retaliated against by KVSP officials for his current civil suit, and for numerous
8  appeal grievances that he filed against the KVSP administration.  Doc. 1 at 6, 28.  On January 22,
9  2007, Plaintiff filed a 602 grievance regarding the retaliatory UCC decision that was rendered by
10 Defendant Fisher and the UCC.  Doc. 1 at 6, 28.
11       Plaintiff asserts that the grievance initially filed on January 22, 2007, regarding the adverse
12 UCC decision rendered by Defendant Fisher and the UCC body on January 10, 2007, was
13 systematically hindered by the appeals coordinators.  Doc. 1 at 7, 28.  According to Plaintiff, his
14 appeal was "unlawfully screened out" six times from February 8, 2007, through June 20, 2007.
15 Doc. 1 at 7, 28.
16       On March 29, 2007, Plaintiff filed a staff complaint against B. Gricewich, the appeals
17 coordinator, for "willfully manipulating the UCC appeal grievance" that Plaintiff attempted to file
18 on January 22, 2007.  Doc. 1 at 8.  Plaintiff asserts that KVSP officials also refused to process
19 Plaintiff's grievance against Gricewhich.  Doc. 1 at 8.  On May 22, 2007, Plaintiff filed another
20 "constructive notice" to A. Hedgpeth regarding B. Gricewhich's refusal to process Plaintiff's staff
21 complaint.  Doc. 1 at 8.  On June 11, 2007, Plaintiff filed another "constructive notice" to N.
22 Grannis, the Chief Inmate Appeals Coordinator, regarding the "retaliatory screenouts."  Doc. 1 at
23 8. Plaintiff asserts that the above described events had a "chilling effect" on Plaintiff's constitutional
24 right to access the courts.  Doc. 1 at 8.
25      **2.    Defendant Ortiz**
26    According to Plaintiff, Defendant H. Ortiz participated in the conspiracy with Defendant
27 Fisher to retaliate against Plaintiff based on the decision from the January 10, 2007, UCC hearing.
28 Doc. 1 at 10, 31.  Plaintiff alleges that Defendant Ortiz carried out Defendant Fisher's objective to

4

confine Plaintiff by means of a prison gang lock-down while criminal investigations were pending. Doc. 1 at 10, 31. On January 11, 2007, the B-Facility underwent a massive cell search that targeted the Hispanic prison gang members who were on lock-down for alleged criminal behavior. Doc. 1 at 10. According to Plaintiff, Defendant Ortiz tagged all the cell doors that identified the Hispanic affiliated inmates that were going to be cell searched as a result of the criminal investigation pursuant to "(PSR) KVP-B-07-001." Doc. 1 at 10. Although Plaintiff informed Defendant Ortiz that he was not affiliated with any Hispanic prison gang and Plaintiff displayed his informative chrono indicating that Plaintiff was an "other," Defendant Ortiz disregarding Plaintiff's documents and still tagged Plaintiff's cell to be searched. Doc. 1 at 10. Defendant Ortiz informed Plaintiff that he was only following orders. Doc. 1 at 10.

As a result of Defendant Ortiz marking the cell, Plaintiff and his cell-mate were "subjected to [a] punitive cell search solely designed to target the 'Hispanic Prison Gang Affiliates.'" Doc. 1 at 11. On January 11, 2007, Plaintiff and his cell-mate filed a group appeal regarding the unlawful retaliatory lock-downs and cell searches. Doc. 1 at 11. Plaintiff argues that the appeal filed on January 11, 2007, was also systematically hindered by the appeals coordinators who refused to process the complaint. Doc. 1 at 11. Plaintiff alleges that his group appeal was unlawfully screened out six times between February 8, 2007, and June 20, 2007, by KVSP officials. Doc. 1 at 11. Plaintiff asserts that as a result of Defendant Fisher's decisions and orders stemming from the UCC hearing, Defendant Ortiz "furthered the conspiratorial objective to illegally confine Plaintiff to multiple lockdowns that were specifically associated to the 'Hispanic Prison Gangs' that Plaintiff was not affiliated to by any means." Doc. 1 at 11.

On March 2, 2007, Defendants Ortiz and Scott approached Plaintiff's cell door stating that a new mandate (No. KVP-B-07-014), required all Hispanic inmates to remain on lock-down, and that according to Defendant Doria, Jose, and Lazcano's orders, since Plaintiff was listed on the DMS as Hispanic, he too had to remain on lock-down. Doc. 1 at 12, 31. On March 9, 2007, Plaintiff filed another staff complaint against Defendants Oritz, Scott, and Jose, for "depriving plaintiff in being able to conduct his (IAC) duties for the (OTHERS)." Doc. 1 at 12, 31. On March 3, 2007, Plaintiff spoke to Lieutenant Blackstone, regarding the illegal affiliation to the Hispanic prison gang's lock-

downs stemming from the January 4, 2007, criminal investigation. Doc. 1 at 12. Following careful inspection of Plaintiff's "CDC-128-G's" and IAC roster demonstrating Plaintiff's association as an "other," Lieutenant Blackstone ordered Sergeant Brodie to immediately release Plaintiff from lock-down, and to restore Plaintiff's privileges. Doc. 1 at 12. On March 4, 2007, Plaintiff informed Correctional Officer Romero what Lieutenant Blackstone had ordered on March 3, 2007, regarding Plaintiff being recognized as an "other" and having his privileges restored.

Correctional Officer Romero contacted Defendant Doria and explained to her what Plaintiff told about Lieutenant Blackstone's orders addressing Plaintiff being categorized as "other." Doc. 1 at 13. Defendant Doria instructed Correctional Officer Romero to disregard Lieutenant Blackstone's orders and to keep Plaintiff on lock-down. Doc. 1 at 13. Later that day, although Plaintiff was on continued lock-down, he was allowed to conduct his IAC duties, since Correctional Officer Rosales adhered to Lieutenant Blackstone's orders. Doc. 1 at 13.

On March 5, 2007, Plaintiff informed Defendant Ortiz of what Lieutenant Blackstone had ordered on March 3, 2007. Doc. 1 at 13. Defendant Ortiz contacted Defendant Doria and explained Lieutenant Blackstone's order. Doc. 1 at 13. Then Defendant Ortiz informed Plaintiff that Defendant Doria instructed him to not allow Plaintiff out and that they were going off of the DMS and what "PSR" had instructed. Doc. 1 at 13. On March 5, 2007, Plaintiff filed an inmate request form to B Facility Captain J. D. Soto, in which Plaintiff complained that subordinates were disregarding Lieutenant Blackstone's orders, and that Plaintiff's chrono listed him as "other." Doc. 1 at 13.

Plaintiff asserts that Defendant Ortiz conspired with Defendants Scott, Doria, and Jose, through agreeing to illegally continue Plaintiff on lock-down with the rest of the "Hispanic Prison Gangs" in furtherance of Defendant Fisher's "conspiratorial objective to vengefully punish plaintiff for exercising his right to complain." Doc. 1 at 13, 32. On March 3, 2007, Plaintiff asked Defendants Ortiz and Scott for permission to leave his cell to preform his IAC duties for the "other" category of prisoners, however, his request was denied. Doc. 1 at 14. On March 9, 2007, Plaintiff filed a staff complaint alleging that KVSP officials, including Defendant Ortiz were retaliating against Plaintiff based on his status as an IAC representative. Doc. 1 at 14. On May 9, 2007,

6

Plaintiff filed another staff complaint against Defendant Ortiz for his maliciously attempt to affiliate Plaintiff to the "Southern Hispanic Prison Gang" through changing Plaintiff's bed card on May 3, 2007, in order to identify Plaintiff as a "Southern Hispanic Affiliate." Doc. 1 at 14, 32.

According to Plaintiff, this staff complaint filed on May 9, 2007, was also purposefully hindered by the appeals coordinators who refused to process the grievance. Doc. 1 at 15, 32. On September 26, 2007, Plaintiff filed a "constructive notice" to A. Hedgpeth, in which Plaintiff complained that B. Gricewich was illegally screening out his complaints. Doc. 1 at 15. On October 18, 2007, Plaintiff received notice that his grievance regarding Defendant Ortiz grievance was "illegally" screen out. Doc. 1 at 15.

### 3. Defendant Scott

According to Plaintiff, Defendant Scott "knowingly participated in the conspiracy to further violate plaintiff's [First] Amendment rights by furthering the vengeful retaliations that [Defendant] Fisher set in motion back in [January] 10, 2007 . . . ." Doc. 1 at 17, 34. Plaintiff alleges that Defendant Scott aided to illegally subject Plaintiff to the prison gang lock-down. Doc. 1 at 17, 34.

According to Plaintiff, Defendant Scott conducted a punitive cell search with Defendant Ortiz pursuant to the "Hispanic Prison Gangs Lockdown." Doc. 1 at 17. On January 18, 2007, in response to Plaintiff's request for official documentation of the cell search, Defendant Scott gave Plaintiff an unofficial document stating: "Cell searched sometime last week I think C/O Big Dogg" and walked away laughing at Plaintiff. Doc. 1 at 17. On March 2, 2007, Defendants Scott and Ortiz informed Plaintiff that a new "PSR" stated that all Hispanic inmates were still on lock-down according to the orders of Defendants Doria and Jose and that Plaintiff was to remain on lock-down, because Plaintiff was listed on the DMS as Hispanic. Doc. 1 at 17. Plaintiff alleges that he had been illegally confined to lock-down since January 10, 2007, because of Plaintiff's Hispanic origin. Doc. 1 at 17-18.

Plaintiff alleges that Defendant Scott knowingly disregarded Lieutenant Blackstone's orders regarding Plaintiff not being on lock-down. Doc 1 at18. According to Plaintiff, on March 4, 2007, and March 5, 2007, Defendants Scott, Oritz, Jose, and Doria all conspired to disregard: 1) Lieutenant Blackstone's orders; 2) Plaintiff's chronos indicating that Plaintiff was an "other"; and 3) the IAC

7

roster indicating Plaintiff as an "other."  Doc. 1 at 18.  On March 3, 2007, Plaintiff asked Defendants Scott and Ortiz for permission to leave his cell to conduct his IAC duties for the "others" category of prisoners, however, his request was denied.  Doc. 1 at 18.  On March 9, 2007, Plaintiff filed a staff complaint alleging that KVSP officials, including Defendant Scott were retaliating against Plaintiff based on his status as an IAC representative.  Doc. 1 at 18.

### 4. Defendant Jose

According to Plaintiff, Defendant C. Jose "knowingly participated in the conspiracy to violate plaintiff's [First] Amendment rights to further the vengeful retaliations that [Defendant] Fisher set in motion back in January 10, 2007, by carrying out [Defendant] Fisher's conspiratorial objective to illegally confine plaintiff to multiple back-to-back [prison gang lock-downs]."  Doc. 1 at 20, 37.

On March 2, 2007, Defendant Jose conspired with Defendants Doria, Ortiz, and Scott to confine Plaintiff to an illegal race-based lock-down that targeted "Hispanic Disruptive Groups."  Doc. 1 at 20, 37.  According to Plaintiff, Defendant Jose had personally instructed the other defendants to continue to place Plaintiff on lock-down which ultimately deprived Plaintiff from being able to conduct his IAC duties for the group of prisoners categorized as the "others."  Doc. 1 at 20, 37.  On March 9, 2007, Plaintiff filed a staff complaint against Defendants Oritz, Scott, and Jose, for illegally subjecting Plaintiff to a Hispanic gang lock-down in retaliation for Plaintiff's participation in the IAC based on Defendant Fisher's determinations at the January 10, 2007, UCC hearing.  Doc. 1 at 20, 37.

Plaintiff alleges that Defendant Jose knowingly disregarded Lieutenant Blackstone's orders regarding Plaintiff not being on lock-down since he was classified as an "other."  Doc 1 at 20. According to Plaintiff, from March 2, 2007, through March 5, 2007, Defendants Scott, Oritz, Jose, and Doria all conspired to disregard: 1) Lieutenant Blackstone's orders; 2) Plaintiff's chronos indicating that Plaintiff was an "other"; and 3) the IAC roster indicating Plaintiff as an "other."  Doc. 1 at 21.  According to Plaintiff, Defendant Jose conspired with Defendants Doria, Scott, and Ortiz, when Defendants Jose and Doria instructed their subordinates to continue to confine Plaintiff to the Hispanic prison gang lock-down in furtherance of Defendant Fisher's retaliation against Plaintiff for serving as an IAC Representative.  Doc. 1 at 21.  Plaintiff asserts that Defendants Jose, Scott and

8

Ortiz racially discriminated against Plaintiff when they denied Plaintiff's right to conduct his IAC duties while permitting Black and White IAC representatives to attend meetings during the Hispanic lock-down. Doc. 1 at 38.

### 5. Defendant Doria

According to Plaintiff, Defendant Doria "knowingly participated in the conspiracy to violate plaintiff's [First] Amendment rights to further the vengeful retaliations that [Defendant] Fisher set in motion back in January 10, 2007, by carrying out [Defendant] Fisher's conspiratorial objective to illegally confine plaintiff to multiple back-to-back [prison gang lock-downs]." Doc. 1 at 23, 39. On March 5, 2007, Defendant Doria relied on information provided by Defendants Ortiz, Scott and Correctional Officer Romero and disregarded Lieutenant Blackstone's orders regarding Plaintiff not being on lock-down since he was classified as an "other." Doc 1 at 23, 39. Based on the information provided, Defendant Doria instructed subordinates to retain Plaintiff on lock-down. Doc. 1 at 39. According to Plaintiff, Defendants Scott, Oritz, Jose, and Doria disregarded Plaintiff's chronos indicating that Plaintiff was an "other," and disregarded the IAC documentation indicating Plaintiff as an "other." Doc. 1 at 23, 39.

## III. Duplicity Standard

According to the Ninth Circuit:

> To ascertain whether successive causes of action are the same, we use the transaction test, developed in the context of claim preclusion. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together."

*Adams v. California Dept. of Health Services*, 487 F.3d 684, 689 (9th Cir. 2007) (quoting *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992)).

### A. Identity of Claims

"Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992). In applying the transaction test, the Court examines the following criteria:

>(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.

*Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir.1982). "The last of these criteria is the most important." *Id.* at 1202. In *Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, 1:08-cv-01404-FRZ, the case proceeded on Plaintiff's second amended complaint. *Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, 1:08-cv-01404-FRZ at Doc. 18; Doc 19. Both actions involve claims that officials from Kern Valley State Prison had violated Plaintiff's rights by discriminating against him through enforcing a race-based Hispanic prison gang lock-down in 2007 and retaliating against Plaintiff in violation of his First Amendment right to serve as a representative on the "Inmate Advisory Counsel" ("IAC"). *Compare Quezada v. Fisher, et al.*, 1:09-cv-01856-LJO-GBC at Doc. 1-2 *with Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, 1:08-cv-01404-FRZ at Doc. 18-19.

According to the screening order in *Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, at *1, 1:08-cv-01404-FRZ at Doc. 19, Plaintiff presented the following claims:

>(1) Plaintiff's Fourteenth Amendment equal protection rights were violated when Defendants placed Plaintiff and other Hispanic inmates on lock-down for an extended period of time but did not subject inmates of other races to the same treatment, conspired to violate Plaintiff's constitutional rights, and failed to correct the constitutional violations by denying his grievances;
>
>2) . . . [Defendants] failed to correct the constitutional violations by denying his grievances; and
>
>(3) Defendants Hedgpeth, Soto, and Grannis violated Plaintiff's First Amendment rights when they retaliated against Plaintiff-for filing grievances and acting as an "I.A.C. Rep."-by "affiliating" Plaintiff with the criminal investigation of a prison gang to which he did not belong, and by denying Plaintiff's grievances related to the retaliation.

*Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, at *1, 1:08-cv-01404-FRZ at Doc. 19. Ultimately, Plaintiff's case in *Hedgpeth* proceeded on equal protection claims stemming from the race-based prison gang lock down and for retaliation based on his status as a representative of the IAC. *Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, at *2-3, 1:08-cv-01404-FRZ at Doc. 19. Based on the above comparison of *Hedgpeth* and this action, the Court finds that both actions stem

from the same series of events and could have conveniently been tried together. *See Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir.1992).

### B.     Privity Between Parties

Both actions involve prison officials at Kern Valley State Prison although based on different theory of who is ultimately responsible for the same constitutional violations. *Compare Quezada v. Fisher, et al.*, 1:09-cv-01856-LJO-GBC at Doc. 1-2 *with Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, 1:08-cv-01404-FRZ at Doc. 18-19. Although *Fisher* names: 1) R. Fisher; 2) C. Jose; 3) D. I. Doria; 4) C. Scott and 5) H. Ortiz and *Hedgpeth* is proceeding on claims against: 1) Hedgpeth; 2) Flores; 3)Nipper; and 4) Soto, defendants in both actions are in privity with each other as employees of Kern Valley State Prison. *See Nordhorn v. Ladish Co., Inc.*, 9 F.3d 1402, 1405 (9th Cir. 2003); *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940); *see also* Adams v. California Dept. of Health Services, 487 F.3d 684, 691 (9th Cir. 2007).

## IV.    Conclusion, Order and Recommendation

### A.     Order

As Plaintiff has a history of repeated violation of Rule 8 of the Federal Rules of Civil Procedure and Plaintiff's tendency to submit lengthy responses to the Court often exceeding fifteen pages,[1] if Plaintiff chooses to file any objections to the findings and recommendations, Plaintiff is ORDERED: to limit Plaintiff's objections to fifteen(15) pages.

### B.     Recommendation

The Court finds that Plaintiff's claim stemming from being kept on a race-based gang lock-down and claim stemming from retaliation based on his status as an IAC representative arise out of the same transactional nucleus of facts as the claims in *Hedgpeth* and both actions involve defendants who are in privity with each other as employees of Kern Valley State Prison. Therefore,

---

[1] *E.g.*, *Quezada v. Hedgpeth, et al.*, 1:08-cv-01404-FRZ at Doc. 11 (dismissal for failure to comply with Rule 8), Doc. 16 (dismissal for failure to comply with Rule 8), Doc. 18 (second amended complaint still in violation of Rule 8 and the court's order); *Quezada v. Lindsey, et al.*, 1:10-cv-01402-AWI-GBC at Doc. 13 (Plaintiff's response to the Court's order to show cause is 291 pages).

the Court HEREBY RECOMMENDS:

    1.    The action be dismissed WITH PREJUDICE as duplicative of *Quezada v. Hedgpeth, et al.*, No. 2009 WL 1911765, 1:08-cv-01404-FRZ;

    2.    The Clerk of Court close the case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

Dated:    January 3, 2012                                                
UNITED STATES MAGISTRATE JUDGE