# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVARO QUEZADA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>R. FISHER, et al.,<br><br>　　　　Defendants. | 1:09-cv-01856-LJO-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS<br><br>(ECF Nos. 1, 41)<br><br>FOURTEEN-DAY DEADLINE |

**Findings and Recommendations Following Screening**

**I.     Background**

Plaintiff Alvaro Quezada ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated this action on October 22, 2009. On July 30, 2012, the Court dismissed this action as duplicative of 1:08-cv-01404-FRZ. Plaintiff appealed.

On May 29, 2014, the Court of Appeals for the Ninth Circuit found that the action was not duplicative as it did not involve the same parties as 1:08-cv-01404-FRZ. Accordingly, the Ninth Circuit reversed the Court's dismissal order and remanded the action for further proceedings. On June 26, 2014, the Ninth Circuit issued its mandate.

On November 25, 2014, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, and found that it stated a cognizable claim for violation of the Fourteenth Amendment

based on allegations of improper classification and race-based lockdowns against Defendants Fisher, Jose, Doria, Scott and Ortiz.  However, the Court also determined that Plaintiff could not proceed with his grievance, conspiracy and retaliation claims or his request for declaratory relief. The Court therefore provided Plaintiff with an opportunity to file an amended complaint or notify the Court whether he was agreeable to proceed only on the cognizable claim.  (ECF No. 40.)

On December 15, 2014, Plaintiff notified the Court his intention to proceed only on the cognizable claim.  (ECF No. 41.)  Accordingly, the Court issues the following Findings and Recommendations.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949

(quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is housed at California State Prison, Corcoran.  The events in his complaint are alleged to have occurred at Kern Valley State Prison.  Plaintiff names the following defendants: (1) R. Fisher, Captain; (2) C. Jose, Sergeant; (3) D. I. Doria, Sergeant; (4) C. Scott, Correctional Officer; (5) H. Ortiz, Correctional Officer.

### A. COUNT ONE - RETALIATION

#### 1. Defendant Fisher

Plaintiff alleges that Defendant Fisher launched a conspiracy to violate Plaintiff's First Amendment rights because of Plaintiff's role as an Inmate Advisory Council (IAC) representative.  (ECF No. 1, p. 4.)  Defendant Fisher penalized Plaintiff because Plaintiff complained to Warden Mike Knowles on August 14, 2006, regarding Defendant Fisher's disregard of IAC representatives.

On January 10, 2007, Defendant Fisher chaired the Unit Classification Committee (UCC) for Plaintiff's annual review.  Plaintiff requested that the UCC take into consideration his "Needs, Interest and Desires" to improve his conditions of confinement.  Plaintiff requested that he be classified as an "(Other)" so that he could program and house with non-affiliated others only.  (ECF No. 1, p. 4.)  Plaintiff introduced his informative chronos, which specified that he housed/programmed with non-affiliated others, along with his officially elected IAC roster, which confirmed Plaintiff as the elected IAC representative for (Others) in the B2 housing unit.  (ECF No. 1, p. 4.)  Plaintiff explained to the UCC that he wanted to eliminate any erroneous association or affiliation to the Hispanic Prison Gangs or Disruptive Groups to avoid race based lockdowns.  Plaintiff, who is of Hispanic Origin, requested removal of his "Mex" classification from the Daily Movement Sheet and reclassification as an (Other).

Plaintiff alleges that Defendant Fisher conspired with the other UCC members to deny Plaintiff's request during his hearing.  Defendant Fisher acknowledged that Plaintiff was not affiliated with any disruptive groups or gangs, but disregarded Plaintiff's informative documents.  In response to Plaintiff, Defendant Fisher stated, "You can write pretty good, so utilize the 602 appeal system."  (ECF No. 1, p. 6.)  After the hearing, Defendant Fisher instructed Plaintiff's housing control officer, C/O Harrison, to confine Plaintiff with the rest of the Hispanic Prison Gang Affiliates that were currently on lockdown and under criminal investigation.  Plaintiff alleges that Defendant Fisher retaliated against Plaintiff by confining him to his cell and subjecting him to a criminal investigation.

On January 11, 2007, Plaintiff notified the newly appointed Warden, A. Hedgpeth, that he was being placed on lockdown and subjected to a punitive cell search specifically targeting Hispanic disruptive groups under a criminal investigation.  Plaintiff explained his IAC representative status and that he was housed with an (Other).  Plaintiff also provided the Warden with copies of his informative chronos.  Plaintiff additionally expressed that he was being targeted with retaliatory measures for his grievances against KVSP administrators.

On January 22, 2007, Plaintiff filed a 602 grievance regarding the UCC decision rendered by Defendant Fisher and the UCC members.  Plaintiff alleges that this appeal was systematically hindered by the appeals coordinators, who refused to process the appeal or unlawfully screened it out six different times between February 8 and June 20, 2007.

**2. Defendant Ortiz**

Plaintiff alleges that Defendant H. Ortiz participated in a conspiracy to violate Plaintiff's First Amendment rights by carrying out Defendant Fisher's retaliatory objective to confine Plaintiff to a prison gang lockdown and criminal investigation.

On January 11, 2007, B-Facility underwent a cell search targeting Hispanic prison gang members on lockdown for alleged criminal behavior.  Defendant Ortiz was tagging all the cell doors that identified Hispanic-affiliated inmates who were subject to the cell search.  Defendant Ortiz tagged Plaintiff's cell door to notify correctional officers to search Plaintiff's cell.  Plaintiff informed Defendant Ortiz that Plaintiff and his cellmate were not affiliated with any Hispanic

1  prison gang or disruptive group. Plaintiff showed Defendant Ortiz his informative chronos and
2  IAC roster that distinguished Plaintiff as an (Other) and the he only programmed with (Others).
3  Defendant Ortiz disregarded Plaintiff's documents and informed Plaintiff that he was only
4  following orders.

5  Plaintiff and his cellmate were subjected to the cell search designed to target the Hispanic
6  prison gang affiliates. After the cell search, Plaintiff repeatedly requested the cell search receipt
7  for the illegal search to no avail.

8  On January 11, 2007, Plaintiff and his cellmate filed a group appeal regarding the
9  unlawful search. Plaintiff alleges that the appeals coordinators refused to process the group
10  appeal. Plaintiff also alleges that the group appeal was unlawfully screened out six different
11  times from February 8 through June 20, 2007.

12  On March 2, 2007, Defendant Ortiz and Defendant Scott approached Plaintiff's cell door
13  and informed Plaintiff that a new PSR had come out stating that all Hispanic inmates were still
14  on lockdown. Defendants also informed Plaintiff that, pursuant to the orders of Defendants
15  Doria and Jose and Sgt. Lazcano, he was to remain on lockdown because he was listed on the
16  Daily Movement Sheet as "Hispanic." Plaintiff already had been on lockdown since January 10,
17  2007.

18  On March 3, 2007, Plaintiff asked Defendants Ortiz and Scott to allow him to conduct his
19  IAC duties. Defendants Ortiz and Scott denied Plaintiff's request.

20  On March 3, 2007, Plaintiff, during third watch, spoke to Lieutenant Blackstone
21  regarding his lockdown and the retaliatory action of staff by affiliating him with the disruptive
22  Hispanic Prison Gangs. Lieutenant Blackstone ordered Sgt. Brodie to release Plaintiff from
23  lockdown and restore his A-1-A privileges.

24  On March 4, 2007, Plaintiff informed Correctional Officer Romero that Lieutenant
25  Blackstone had ordered Sgt. Brodie to honor Plaintiff's program as an (Other). Officer Romero
26  contacted Defendant Doria and explained Plaintiff's situation and Lieutenant Blackstone's order.
27  Defendant Doria instructed Officer Romero to maintain Plaintiff on lockdown and to disregard
28

1   Lieutenant Blackstone's orders.  On the same day, Plaintiff was allowed to conduct his IAC
2   duties by Officer Rosales.

3         On March 5, 2007, Plaintiff informed Defendant Ortiz about Lieutenant Blackstone's
4   orders.  Defendant Ortiz contacted Defendant Doria.  Defendant Ortiz later informed Plaintiff
5   that Defendant Doria instructed him not to allow Plaintiff out and that they were following the
6   Daily Movement Sheet and PSR.

7         On the same date, Plaintiff filed a handwritten inmate request to Captain Soto.  Plaintiff
8   informed Captain Soto that his subordinates on second watch continued to disregard Lieutenant
9   Blackstone's orders and that Plaintiff's informative chronos and IAC roster confirmed Plaintiff's
10  program as an (Other).

11        On March 9, 2007, Plaintiff filed a staff complaint against Defendants Ortiz, Scott and
12  Jose for depriving Plaintiff of his ability to conduct his IAC duties for the (Others).  Plaintiff
13  alleges that he was being punished at the behest of Defendant Fisher.

14        On March 9, 2007, Plaintiff filed another staff complaint against Defendant Ortiz for
15  allegedly attempting to affiliate Plaintiff with the Southern Hispanic Prison Gang when
16  Defendant Ortiz changed Plaintiff's bed card from Yellow to Red.  The Red card distinguished
17  Plaintiff as a Southern Hispanic affiliate, but the Yellow card distinguished Plaintiff as an
18  (Other), non-affiliated inmate.  According to Plaintiff, the card system is used to identify general
19  population inmates on the basis of who they associate with or house.

20        Plaintiff alleges that his staff complaint against Defendant Ortiz was hindered by the
21  appeals coordinators that refused to process or address his appeals.  On September 26, 2007,
22  Plaintiff submitted a notice to Warden Hedgpeth in which Plaintiff explained the chain of events
23  regarding the manipulations of this staff complaint by B. Gricewich, the appeals coordinator.  On
24  October 18, 2007, Plaintiff received a screen out of his staff complaint.

25      **3.   Defendant Scott**

26        Plaintiff alleges that Defendant Scott participated in a conspiracy to retaliate against
27  Plaintiff in violation of his First Amendment rights.

28

1  Plaintiff contends that he repeatedly requested the cell search receipt after the cell search
2 he and his cellmate were subjected to by Defendants Ortiz and Scott.  On January 18, 2007,
3 Defendant Scott approached Plaintiff's cell door and slid a white sheet of a paper into the cell.
4 The paper stated, "Cell searched sometime last week I think C/O Big Dogg."  (ECF No. 1, p. 17.)
5 Defendant Scott walked away laughing.

6  On March 2, 2007, Defendant Ortiz and Defendant Scott approached Plaintiff's cell door
7 and informed Plaintiff that a new PSR had come out stating that all Hispanic inmates were still
8 on lockdown.  Defendants also informed Plaintiff that, pursuant to the orders of Defendant
9 Doria, Defendant Jose and Sgt. Lazcano, Plaintiff was to remain on lockdown because he was
10 listed on the Daily Movement Sheet as "Hispanic."  Plaintiff already had been on lockdown since
11 January 10, 2007.

12  Plaintiff alleges that Defendant Scott knowingly disregarded Lieutenant Blackstone's
13 direct orders to Sgt. Brodie regarding Plaintiff's program being honored as an (Other).  Plaintiff
14 asserts that from March 4 to March 5, 2007, Defendants Scott, Ortiz, Jose and Doria "conspired
15 to disregard Lt. Blackstone's orders, and plaintiff's informative chronos, and (IAC) roster[] that
16 clearly distinguished plaintiff as an (Other)."  (ECF No. 1, p. 18.)

17  On March 3, 2007, Plaintiff asked Defendants Scott and Ortiz to allow him to conduct his
18 IAC duties for the (Others) because they were permitting IAC representatives for the Whites and
19 Blacks to conduct their official duties.  Defendants Scott and Ortiz denied Plaintiff's request.

20  On March 9, 2007, Plaintiff filed a staff complaint against Defendant Scott alleging that
21 Defendant Scott was retaliating against Plaintiff for being active in his IAC duties and filing
22 appeals, complaints and lawsuits against prison officials.

23  Plaintiff alleges that Defendant Scott conspired with Defendants Ortiz and Jose to
24 affiliate Plaintiff to the Southern Hispanic prison gang's lockdowns.

25  **4.  Defendant Jose**

26  Plaintiff alleges that Defendant Jose participated in a conspiracy to retaliate against
27 Plaintiff in violation of the First Amendment by illegally confining Plaintiff to multiple prison
28 gang lockdowns.

7

Defendants Ortiz and Scott informed Plaintiff that Defendant Jose had personally instructed them to keep Plaintiff on lockdown on March 2, 2007, which prevented Plaintiff from conducting his IAC duties and exercising his privileges.

On March 9, 2007, Plaintiff filed a staff complaint against Defendants Jose, Scott, and Ortiz for illegal confinement and retaliation.

Plaintiff alleges that Defendants Jose, Scott, and Ortiz conspired to punish Plaintiff by confining him to a Hispanic Prison gang lockdown. Defendant Jose disregarded Lt. Blackstone's orders to Sgt. Brodie regarding Plaintiff's program being honored as an (Other).

From March 2 to March 5, 2007, Defendants Jose and Doria instructed Defendants Ortiz and Scott and Officer Romero to disregard Lt. Blackstone's orders. Defendants Jose, Scott, Ortiz and Doria disregarded Plaintiff's informative chronos.

Plaintiff alleges that Defendant Jose conspired with Defendants Doria, Scott and Ortiz when Defendant Jose instructed his subordinates on second watch to keep Plaintiff confined with the Hispanic Prison gangs that were on lockdown.

Plaintiff further alleges that KVSP conspired to have him unlawfully removed from the IAC because he had complained to Warden Knowles regarding Defendant Fisher.

**5. Defendant Doria**

Plaintiff alleges that Defendant Doria engaged in a conspiracy to retaliate against Plaintiff in violation of the First Amendment by confining him to multiple prison lockdowns. Plaintiff further alleges that Defendant Doria participated in a meeting of the minds with Defendants Jose, Scott and Ortiz to confine Plaintiff to an illegal lockdown associated with a Hispanic Prison gang that Plaintiff did not affiliate with in any manner.

On March 5, 2007, Defendant Doria reportedly instructed Defendants Ortiz, Scott and Officer Romero to disregard Lt. Blackstone's orders on third watch because second watch was different and they were going to follow the Daily Movement Sheet and PSR, which stated that all Hispanics were to remain on lockdown.

Defendants Doria, Jose, Scott and Ortiz disregarded Plaintiff's informative chronos that Plaintiff did not affiliate with prison gangs or groups, he did not house with any Hispanic Affiliated Inmate and he was the officially elected IAC representative for the (Others).

### B. COUNT TWO – FOURTEENTH AMENDMENT

#### 1. Defendant Fisher

Plaintiff alleges that Defendant Fisher used Plaintiff's race/Hispanic origin to affiliate him with a Hispanic prison gang lockdown/criminal prosecution in violation of the Fourteenth Amendment.

On January 10, 2007, Defendant Fisher acted as Chairperson during Plaintiff's annual UCC review. Plaintiff expressed to the UCC members that he was the elected IAC representative for (Others), he housed with non-affiliated (Others) and his informative chronos confirmed him as a non-affiliated Hispanic who housed with non-affiliated others. Plaintiff requested that the UCC reclassify him as (Other) for purposes of clarification and to eliminate any erroneous associations or affiliations to Hispanic prison gangs or groups because prison officials implemented race-based lockdowns. Plaintiff requested expunging of his MEX or Mexican classification from the Daily Movement Sheet and that he be re-classified as (Other).

Plaintiff alleges that Defendant Fisher acted in a conspiracy with the UCC members to deny Plaintiff's request. After the hearing, Defendant Fischer instructed Control Officer Harrison and the floor correctional officers to confine Plaintiff with the Hispanic prison gangs that were on lockdown/under a criminal investigation. Plaintiff informed Defendant Fisher that he was knowingly affiliating Plaintiff with a Hispanic prison gang, but that Defendant Fisher had personally signed one of Plaintiff's informative chronos acknowledging that Plaintiff was a non-affiliated Hispanic that did not affiliate with prison gangs or disruptive groups and that Plaintiff wanted to house with non-affiliated others. Defendant Fisher responded, "You can write pretty good, so utilize the 602 appeals system." (ECF No. 1, p. 28.)

On January 11, 2007, Plaintiff notified Warden Hedgpeth that Plaintiff and his cellmate did not affiliate with any of the Hispanic disruptive groups that were under criminal investigation and lockdown.

On January 22, 2007, Plaintiff appealed the UCC decision. Plaintiff alleges that the UCC appeal was obstructed six different times between February 8 and June 20, 2007.

**2. Defendant Ortiz**

Plaintiff alleges that Defendant Ortiz participated in a conspiracy to violate Plaintiff's Fourteenth Amendment rights by confining Plaintiff to a Hispanic Prison gang's lockdowns because of Plaintiff' Hispanic origin.

On March 2, 2007, Defendants Ortiz and Scott approached Plaintiff's cell door and informed him that a new PSR stated that all Hispanic inmates were to remain on lockdown and, according to Defendants Jose and Doria, Plaintiff was to remain on lockdown because Plaintiff was listed on the Daily Movement Sheet as Hispanic.

On March 9, 2007, Plaintiff filed a staff complaint against Defendants Ortiz, Scott and Jose for depriving Plaintiff of his right to conduct his IAC activities and suspending his privileges.

Plaintiff asserted in a third level appeal that the race-based lockdowns were constitutionally impermissible and violated his Fourteenth Amendment rights. Plaintiff also complained that his privileges were being suspended because he was of Hispanic origin.

On May 3, 2007, Defendant Ortiz continued to affiliate Plaintiff with the Southern Hispanic Prison gang when he changed Plaintiff's bed card from Yellow to Red. The Red card affiliates any inmate that houses with a Southern Hispanic Affiliate.

On May 9, 2007, Plaintiff filed a staff complaint against Defendant Ortiz because of the affiliation.

**3. Defendant Scott**

Plaintiff alleges that Defendant Scott participated in a conspiracy to violate Plaintiff's Fourteenth Amendment rights. Plaintiff further alleges that Defendant Scott illegally confined Plaintiff to a Hispanic prison gang lockdown/criminal investigation based on his Hispanic origin and not because he was affiliated or housed with an affiliated Hispanic inmate.

On March 2, 2007, Defendants Scott and Ortiz approached Plaintiff's cell door and informed Plaintiff that a new PSR stated that all Hispanic inmates were to remain on lock down

1  and, according to Defendants Jose and Doria, Plaintiff was remain on confinement because he
2  was listed on the Daily Movement Sheet as Hispanic.
3        On March 9, 2007, Plaintiff filed a staff complaint against Defendants Scott, Ortiz and
4  Jose for depriving Plaintiff of his right to conduct IAC duties and for suspending his privileges.
5        Plaintiff asserted in a third level appeal that the race-based lockdowns were
6  constitutionally impermissible and violated his Fourteenth Amendment rights.

      **4.  Defendant Jose**

      Plaintiff alleges that Defendant Jose participated in a conspiracy to violate Plaintiff's Fourteenth Amendment rights by affiliating Plaintiff with a Hispanic Prison Gang because of Plaintiff's Hispanic origin.

      On March 2, 2007, Defendant Jose agreed to confine Plaintiff with the rest of the Hispanic Disruptive Groups that were on continual lockdown.  According to Defendants Ortiz and Scott, Defendant Jose instructed them to keep Plaintiff on a lockdown targeting Hispanic prison gang affiliates.  Plaintiff asserts that he was not housed with or affiliated with any Hispanic prison groups, but he remained on lockdown because he was of Hispanic origin.  As a result of the lockdown, Plaintiff was stripped of his privileges.

      On March 9, 2007, Plaintiff filed a staff complaint against Defendants Jose, Scott and Ortiz for violating Plaintiff's Fourteenth Amendment rights, including suspension of Plaintiff's privileges.  Plaintiff also complained of the race-based lockdowns and the inability to perform his IAC activities for (Others).

      Plaintiff alleges that Defendants Jose, Scott and Ortiz deprived Plaintiff his right to function as an IAC representative for (Others) because he was of Hispanic Origin.

      **5.  Defendant Doria**

      Plaintiff alleges that Defendant Doria participated in a conspiracy to violate Plaintiff's Fourteenth Amendment rights by forwarding race-based policies used to affiliate Plaintiff with a Hispanic prison gang's investigations and confinement.

11

Plaintiff contends that from March 2 to March 5, 2007, Defendant Doria participated in a meeting of the minds with Defendants Jose, Scott and Ortiz where they agreed to confine Plaintiff with the Hispanic Disruptive Groups that were placed on continual lockdown.

According to information provided by Defendants Ortiz and Scott and Officer Romero, on March 5, 2007, Defendant Doria instructed them to keep Plaintiff on lockdown and to disregard Lt. Blackstone's orders regarding honoring Plaintiff's program as an (Other). Plaintiff remained on continual lockdown and stripped of his privileges because of his Hispanic origin.

**C. Requested Relief**

Plaintiff seeks compensatory and punitive damages, along with declaratory relief.

**III.    Discussion**

**A. Grievance Procedure**

Plaintiff includes allegations concerning the administrative appeal process in Counts 1 and 2. However, Plaintiff cannot state a claim based on the purported failure of the appeals coordinators, including B. Gricewich, to respond to or process his grievances. Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). A prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993).

**B. Conspiracy**

Plaintiff asserts a conspiracy claim in Counts 1 and 2.

A conspiracy claim brought under section 1983 requires proof of " 'an agreement or meeting of the minds to violate constitutional rights,' " Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540–41 (9th Cir.1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). " 'To be liable, each participant in the conspiracy need not

know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.' " Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff's allegations of conspiracy are wholly speculative and lack plausibility. Plaintiff fails to present specific facts to support his claim that Defendants entered into a conspiracy. Plaintiff's conclusory statements regarding a conspiracy and purported meeting of the minds are not sufficient.

### C. Count One – Retaliation in Violation of the First Amendment

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). In order to state a claim, the plaintiff's protected conduct must have been "the 'substantial' or 'motivating' factor behind the defendant's conduct." Brodheim, 584 F.3d at 1271, quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

At the pleading stage, Plaintiff has failed to state a cognizable retaliation claim against any of the defendants. According to Plaintiff's allegations, the UCC classification of Plaintiff as Hispanic was based on his admitted ethnic origin as Hispanic. Plaintiff's protected conduct was not the substantial or motivating factor behind Defendant Fisher's conduct in connection with the UCC classification decision. Further, the allegations demonstrate that the decision to retain Plaintiff on lockdown was based on his designation as Hispanic, not because of any protected conduct.

### D. Count Two – Fourteenth Amendment

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974) (citation omitted). A prison classification based on race is "immediately suspect" and is subject to strict scrutiny. Johnson v. California, 543 U.S. 499, 505–06, 509, 125 S.Ct.

1141, 160 L.Ed.2d 949 (2005). Under strict scrutiny, the government must demonstrate that "reasonable men and women could not differ regarding the necessity of a racial classification in response to prison disturbances and that the racial classification was the least restrictive alternative (*i.e.,* that any race-based policies are narrowly tailored to legitimate prison goals)." Richardson v. Runnels, 594 F.3d 666, 671 (9th Cir. 2010).

At the pleading stage, Plaintiff has stated a claim against Defendants based on allegations of improper race-based lockdowns.

### E.  Declaratory Relief

Plaintiff seeks a declaration that his rights were violated. "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985). In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, the verdict will be a finding that Plaintiff's constitutional rights were violated. Accordingly, a declaration that a defendant violated Plaintiff's rights is unnecessary.

### IV.  Conclusion and Recommendation

The Court finds that Plaintiff's complaint states a cognizable claim for violation of the Fourteenth Amendment based on his allegations of improper classification and race based lockdowns against Defendants Fisher, Jose, Doria, Scott and Ortiz, but has failed to state any other cognizable claims. The Court therefore recommends that Plaintiff's claim arising from his grievances, his conspiracy claim, his retaliation claim and his request for declaratory relief be dismissed from this action.

Plaintiff was provided with an opportunity to file a first amended complaint, but opted to proceed on the cognizable Fourteenth Amendment claims against Defendants Fisher, Jose, Doria, Scott and Ortiz. As such, the Court does not recommend granting further leave to amend.

Based on the foregoing, it is HEREBY RECOMMENDED as follows:

1. This action proceed on Plaintiff's complaint, filed on October 22, 2009, for violation of the Fourteenth Amendment based on his allegations of improper classification and race based lockdowns against Defendants Fisher, Jose, Doria, Scott and Ortiz.
2. Plaintiff's claim arising from his grievances, his conspiracy claim, his retaliation claim and his request for declaratory relief be dismissed.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 18, 2014**             /s/ Barbara A. McAuliffe           _
UNITED STATES MAGISTRATE JUDGE